Good morning. I will try to reserve five minutes. You can see how that's been going. Yes, that's why I thought I'd better mention it. Knowledge is not intent in Texas or in American law in general. Consequently, regardless of how the court decides the issues of divisibility and the admissibility of the post hoc proffer, the Shepard compliant record here unequivocally shows only the non-generic mental state of knowledge. Let me ask you this, counsel, keeping with our theme here. In U.S. v. Melchor Messino, a 2010 case we decided, we held that a Colorado menacing statute, and I quote, includes the mens rea of intent for a crime of violence because it, in quotes, requires the defendant to knowingly place another person in fear of imminent serious bodily harm. That being the case, admittedly it's an analogy, but we clearly have, at least in that statute, found the opposite of what you just contended. Your Honor, I think the problem with the Melchor case is that, in fact, the defendant didn't challenge the knowledge mental state. He was challenging the recklessness. And the reason he lost is because he didn't adduce a single case from Colorado that showed that recklessness sufficed. And now whatever, because he didn't even attack knowledge, and the whole question was recklessness. So you think it's distinguishable because counsel didn't do a good job? Well, because it wasn't raised and, therefore, whatever the court said about knowledge is dictum. And, in fact, I think it's worse than dictum because there is controlling authority in this circuit and from the Supreme Court that says just the opposite, that knowledge is not intent. And let me just quote this passage from Giles v. California. I guess so. Are you, is there a specific case that has distinguished between knowledge and intent in determining whether a person has the requisite men's right for a conviction of a crime of violence? Or are you going to sort of cobble something together? I guess, first, is there a specific case? There is none that says that. And by what I have shown in my reply on pages 26 to 27, I quoted over 15 passages from pertinent cases drawing the line for crime of violence. The definition, the criterion for crime of violence is intent, intentional. The court has said that over and over again. The dividing line is intent, not something less than intent, not something intent-ish, which is what the government is arguing. They're saying that, well, knowledge has been called similar to general intent. And that word intent is in there. So that should get us over the line. But in fact, the Supreme Court in this court in multiple cases has said that is not the case. The Supreme Court said in Giles, every commentator we are aware of has concluded the requirement of intent means that the exception applies only if the defendant has in mind a particular purpose. The commentators come out this way because the dissents claim that knowledge is sufficient to show intent is emphatically not italicized, emphatically not the modern view. That's the Supreme Court's distinction between knowledge and intent. This court has again and again said that general intent does not suffice to show a crime of violence. This court in Nervais-Gomez, which Judge Wardlaw sat on, said that a general intent crime, shooting at an inhabited dwelling, does not satisfy the mental state for crime of violence. In the immigration context, the court said the same thing in Covarrubias-Teposte. And more importantly, in Flores-Lopez, which Judge Calhoun and Judge Wardlaw also sat on in that unanimous panel, said that a general intent crime is not, in that case, resisting an officer, does not qualify as a crime of violence. And I want to point out Flores-Lopez is particularly important here because it also puts paid to one of the government's other arguments that somehow the mental state is different under 16a and 16b. Because in Flores-Lopez, the court said, no, that's not different. There's the same mental state as this court has said over and over in Gomez-Leon and Malta-Espinosa in several cases. The mental state is 16a and 16b is the same. But this court also went further in Flores-Lopez and said that not only is it not the same mental state, general intent is not intent or is knowledge general intent doesn't satisfy it. But the court went and said that we don't even believe there's a substantial risk of harm for a crime that is resisting an officer and requires physical contact. The court said that's too speculative, that there's going to be actual force applied in this case. Now contrast that with the Texas offense here, which doesn't inherently have as an element resistance to another person, which California Penal Code 69 does. The gravamen of that is a physical resistance to an officer. And yet the court said it was too speculative that there would be a substantial risk of force in that case. Whereas in the Texas case, there is no resistance that's an element. And moreover, this particular version of the Texas offense was a mere threat. There's no physical contact. So if it's too speculative for California resisting an officer with physical force, if that's too speculative to fit 16b under Flores-Lopez, I'd have to say that this Texas offense is much further back than that. Let me ask you this. These are admittedly two out of circuit cases, but I'm interested in your view on them. In Hernandez-Rodriguez, the Fifth Circuit held that a Texas statute criminalizing in quotes knowingly in quotes shooting in the direction of another person is categorically a crime of violence. And in Quesada Luna v. Gonzalez, a 2006 Seventh Circuit case, that circuit held that an Illinois statute that punishes in quotes knowingly or intentionally discharging a firearm into an occupied building is categorically a crime of violence. Any comments on those cases and the reasoning? Yes, Your Honor. I think certainly counsel points to a number of cases where there's a lot of loose talk in some decisions about knowledge and intent being the same or very similar. And indeed, let's be honest about this. The reality is human motivations are not in discrete boxes like we like in the law. There's a continuum. They're overlapping. They're conflicting. But for purposes of the law, we have to divide them into discrete categories, which is what the model penal code does. The version of culpability, which the Supreme Court has endorsed daily. Now, we have to draw the line somewhere, and that means that knowledge, we're going to have mental states that in reality are really very similar or overlapping. For legal purposes, we have to treat them as separate. Well, but knowledge and intent basically rule out accident, right? Not necessarily, because here's the way the – just before arguing, I went and looked in your excellent library in the commentaries of the model penal code, and I would urge the court to look at those in describing why they made a division between purpose, that is, intent, and knowledge. And they say specifically that they are trying to clarify that these are the same. And they know, of course, these are very similar because that's what's going to happen on a spectrum, that two things next to each other on the spectrum are going to look very much alike. But for legal purposes, they are different because it's the difference between somebody willing something to happen as opposed to allowing something to happen. That's the difference. And because we're talking about a scale of culpability, who is most culpable, someone who wants something to happen or someone who allows something to happen? We will say, as the American Law Institute said, and as the Supreme Court endorsed in Bailey, it's more important that it's more culpable when a person desires, subjectively desires this. And the model penal code points out in the commentary, they specifically rejected a decision by the House of Lords which confused those two things, the way the government is talking about it, where they just say, well, knowledge, intent, they're pretty intent-ish. They're kind of the same. The committee specifically decided we're going to keep these separate because they're important in law. There are cases where it makes a difference whether the person has a subjective purpose and whether they simply have knowledge about that. What documents are we supposed to look at to determine whether the conviction was actually for a crime of violence? Which documents in this record? Really, there were several that were proffered. They were all proffered, never seen by the IJ, which is a separate issue. But the only ones that really say anything, most of them say simply aggravated robbery without even a code section citation. A couple cite the code section. The only two that really tell us any details are the indictment, which I believe is on page 105 of the ER, and the plea colloquy. So this was the district court, not the IJ, right? Sorry? Are you talking the district court or the IJ when you said we're never seen by the IJ? Who are you talking about? Oh, these records, as far as we can tell, it seems pretty clear that the IJ never saw any of these Shepard documents. None of them. Not even the indictment. Are they required to? Judge Gonzales did. Well, if the IJ is going to make a categorical analysis, yes, under S. Young, you have to have some Shepard-compliant records in order to do a categorical analysis. What about Bustos Ochoa? The problem with Bustos Ochoa, as I pointed out in my briefs, Your Honor, is that that deals with a very different issue of relief. And as was just pointed out by this court in Aguilera-Rios, there's a really important distinction between in a demotion, whether you're talking about removability or relief. And Bustos Ochoa is based on two premises. One, to deny the government the ability to bring in documents later that the IJ didn't see would effectively shift the burden because the government has no burden whatsoever on relief. And it would be unfair to say to the government, well, you have to disprove eligibility before the IJ on pain of the fact that later on you're going to default. They just said that's shifting the burden. That's unfair. But here we're talking about removability. The burden is on the government to show by clear and convincing evidence. And talking about Bustos Ochoa, does our opinion allow us to consider the record of his Texas conviction in determining whether his removal was fundamentally unfair? Can we look at it? I don't believe so, Your Honor. I think that's just the point of the, that it shouldn't have been looked at by the district court and therefore this court can't consider it either. Because the IJ didn't have it in front of him? The IJ didn't have it. The government woefully failed to satisfy its burden to show that this was an aggravated felony. As we pointed out in the briefs, there is no case that says this crime is an aggravated felony. The government and the IJ should have realized that there is no case saying this is an aggravated felony. Shouldn't the government have to put in something, say something to show that it's an aggravated felony? It's clearly a divisible statute. So in order to say that he was convicted of aggravated robbery on the basis of a divisible statute would probably run contrary to the scams. As I argued, Your Honor, I believe there's three levels in which this statute is indivisible. And the court should have never gone to the second stage. This court can never go to the second stage. But I was making the argument that even if you did, even if you go all the way down the rabbit hole, what it comes down to is the only thing that was ever mentioned at the plea colloquy was knowledge. There is no indication of intent. This court time and again has drawn the line for crime of violence definition purposes at intent. Intent versus non-intent. Well, it's so odd because this is the defendant who ran as opposed to the one who... So he was convicted under the law of parties, which is a Texas law that I assume is vicarious liability. That's right, Your Honor. As far as saying that this is an adequate record under Shepard to show what really happened there, number one, the co-defendant, who everyone agreed in the end was the one who had the tire iron, he denied it at his plea colloquy. Mr. Palacio said when the guy showed up, he ran away. How does he know what the mental intent was that was used with that tire iron? How could he establish a rational, factual basis for what that other person's mental intent was? It just doesn't seem that you can use that, that this complies with Shepard, that this shows unequivocally and necessarily that he was convicted of anything except knowledge, which was the only thing that was mentioned at the plea colloquy. Even though he was charged with intent and knowledge, which under Young is also ambiguous and cannot decide this, the plea colloquy specifies only knowledge. That's the only thing. To the extent that Mr. Palacios could even know what his co-defendant's mental state was at the time, since he, as you point out, he ran away when the guy showed up. You're aspirationally at one minute. Okay. I know I will have to respond to Mr. Rakey, so I won't do that. Good morning. Good morning. Mark Rakey for the United States. Your Honors, there is no doubt under the law of this circuit that a general intent crime is sufficient to satisfy 18 U.S.C. 16A and the elements clause in 201.2. This court held as much in United States v. Grajeda. It held as much in United States v. Larrick O'Eno. In fact, I'm going to quote 590 F. 3rd and 822, the fourth footnote, a general intent crime can satisfy the generic definition of crime of violence. Two months ago in May, Judge Callahan, you said on a panel, United States v. Colon, Areola, a 28-J. Both of you are reading our opinions more than we do. It's all right. It's all good. But that, again, you expressly reaffirmed that general intent is good enough. And I believe Judge Smith said right out of the gates, too, that if there's one case that satisfies, is dispositive here, it's Melchor Messina. I mean, when you get- Right. There's some basic questions that make this case just a little strange. First of all, on what basis did the I.J. decide that this was a crime of violence and that Palacios should be deported for it? What was the basis? Was there anything in front of him? Was there any analysis done? It wasn't much, Your Honor. No, but I think the thing is the defendant admitted all of the factual allegations in the pleading, I mean, in the notice to appear. And you see that- Where is that? That is, I believe, at Excerpt of Record, page 170. He admits that he was born in Mexico, that he became a permanent resident in April of 1989, and that he was convicted in December 2005 of a robbery charge. Right, but how does that tell you whether he was convicted of a crime of violence or not? I mean, it doesn't get into all the nuances of the categorical approach, I'll grant you that. I know, and we've had a lot of these cases this week. I feel like we're going to have to look at every criminal statute in the whole United States before we get through with this. But, I mean, if we have to do that, how come the I.J. doesn't have to do that? Well, you know what, that would have been something for the defendant to directly appeal, Your Honor. It didn't exhaust the remedies as to that. I think at the time, when somebody admits to convicting robbery or being convicted of robbery- But as we've seen, not all robberies- They didn't even have the Texas Penal Code. Even the Texas Penal Code robbery itself is a divisible statute. Not all robberies are categorically going to be a crime of violence. But then the question is, we want to talk about the burden. He has the burden of proving prejudice, so then we look at it now. That's why- Well, so I guess that takes us to the next step. If you're saying he failed to exhaust, can we determine whether he failed to exhaust his administrative remedies as required under 8 U.S.C. 1326 without first deciding whether the Texas conviction was a crime of violence? Do we have to do that to decide whether he exhausted? I don't think it should have to be that way, Your Honor, because that requirement stands separate from the fundamental unfairness, which is subsection 3 of 1326D. Here, the only charge is an aggravated felony, and he's found removable. He has notice about three weeks before the hearing. He waived his right to appeal. There's never been any contention by my opponent that it was a knowing or not a knowing or intelligent waiver. Our position is that you don't have to go any further. Okay, so that related question. Now when we're looking at the 1326D collateral attack, are we allowed to look at all the other documents since this is a divisible statute to determine whether it was, in fact, a crime of violence? The government's contention is absolutely, Your Honor. This would be an extension of Bustos v. Chillin. So the government would ask that this court use this case or another one soon to make that extension. The reason why is simple. 1326D.3, Fundamental Unfairness, has always required two components, proof of a due process violation and proof of prejudice. If one wants to assume that the due process violation here was that the I.J. didn't look at the records, then the question is, what's the prejudice? He either was or he was not convicted of an aggravated felony. So the Fundamental Fairness inquiry is broader. So we are allowed to look at all those documents to determine whether he, in fact, committed a crime of violence. Of course, my opponent says otherwise. Okay, and that's based on Bustos v. Chillin. I mean, he's saying Bustos v. Chillin says we can't look at them. You're saying it says we can, or you would like a published opinion saying that that's what it means. The latter, exactly. Excuse me one second. I want to be sure I understand you correctly. I thought your opponent said that Bustos v. Chillin can be recognized for purposes of the relief portion of it but not for the underlying offense. Well, that's the distinction he wants to draw. I understand. No, I get that. I know you're not agreeing with that. But your point is that in this situation, and when you get to Fundamental Fairness, in the same sense that the IJ could go back and look at records if he chose to do so, in this case, your contention is that when you look at the indictment, the plea agreement, all that sort of thing, you can look at what he pled to. He agreed, he did, he said he served a multiyear term, that's enough. It was fair. You've got a few unpublished things like Pargas-Gonzalez and Ramos-Perez who follow the same line. But you're saying that, as a matter of fairness, there's nothing wrong with this. All of us wish the Supreme Court had never launched Taylor in the first place. We all spend thousands and thousands of hours ferreting through all of the statutes, the criminal statutes in the United States in handling these cases. But we are where we are. And you're saying that because this happens in a number of cases, that at least you would like us to consider if we agree with you to apply bustos ochoa in this context. Correct. Because I think it makes eminent sense. The thing about bustos ochoa, yes, it arose in an eligibility for relief context. And it is true that one of its stated rationales was, well, this would really turn logic on its head, because even if this were here on direct review, it's never the government's burden to disprove eligibility for relief. So to that extent, we here are dealing with a challenge for mobility as charged. But my point is the same result in bustos ochoa should fall here, even if from a different rationale. And that rationale is that the defense has not only a burden to show a due process violation, but a burden to show prejudice. And a lot of the cases that he relies on, like S. Young, they're all direct review. I think it is the law that on direct review, if I didn't have a United States attorney in front of my name, but I was here from a civil agency, then we would be limited to exactly what was in front of the IJ. But we're not. This is collateral review. Fundamental unfairness requires the prejudice component. When my opponent gets up, ask him then why his position doesn't collapse the two. I think, Judge Callahan, you even, I listened to one of your arguments earlier this week. This point was made in United States v. Vidal-Mendoza. There has to be a distinction between direct and collateral review. The position of my opponent would collapse that. I mean, you know, he, again, he either is or he isn't removable as an aggravated felony. And I say you can if you adopt the logic, and if you look at the documents, there is no doubt. And, you know, one of the points I know my opponent said a second ago, a lot of them, they don't have the exact subsection. That's why 28J, in this case, Cabrera-Perez, which says even if it doesn't say the exact subsection, as long as it tracks it verbatim, you satisfy the modified category. You know which subsection it is. Here, there is no doubt that it's the 29.02A2, the threatened prong of the Texas robbery statute. And what the government's position is, is that every single violation of A2, which is divisible, satisfies this definition of crime of violence. There are only two possible mens rea for that subsection, knowingly, intentionally. Of course, my opponent doesn't dispute that intentionally counts, and that's what brings us to the issue of whether knowingly counts. And I, you know, I want to be clear on that again. I think one of the points my opponent said in the very beginning was, oh, I'm not sure I'm saying they didn't really decide this issue. That is not true. He says all that the defendant there did was say, well. Wait a second. I think there's a third element of A2 that you omitted. It's intentionally or knowingly or places another in fear of imminent bodily injury. Places another could be negligent. It could be reckless. I mean, I respectfully disagree on that. When I said there are two elements, there are two mens rea components. You have to either intentionally threaten somebody with imminent bodily injury or knowingly, or, you know, intentionally or knowingly either affirmatively threaten them or place them in fear. What do we do with the fact that he, according to the plea colloquy, he ran? He wasn't the one who placed the bodyguard in fear of imminent bodily injury. All due respect, Your Honor, I don't think you look at it at all. This isn't supposed to be about going into the facts. It's funny. I thought we were doing modified categorical. We are. But when you plead guilty, I mean, this is almost like a collateral attack on the sufficiency of evidence. No, but that's one of the things you're supposed to look at, isn't it, what they pled to? Yeah, but with the focus on the elements. He stands guilty, and it is the law of the parties, which is like aiding and abetting. It's no different in federal law. If he's with a group of people and he starts a chain of actions, it doesn't matter. I mean, I would say, first of all, it doesn't, frankly, it doesn't matter that he ran away. He agreed that he was part of a group that was trying to steal this tire and that they had a tire iron. I mean, you know, he makes self-serving statements to try to minimize his conduct. He can't get away from that now. He stands convicted under this subsection 18. All right. So what is your best case that knowingly satisfies the crime of violence standard? Melchor Moceno. And why do I say that? Because the definition of knowingly in Colorado is virtually identical to that in Texas. When you look at Colorado revised statute 18-1-501 sub 6, it's defined as when the defendant is aware that his conduct is practically certain to cause the result. When you look at Texas penal code section 6.03 sub B, it's defined as when he's aware that his conduct is reasonably certain to cause the result. The only difference being the practically and the reasonably part. That right there is as close to being on point as you can get. Aside from that, Larco, Yeno, Colon, Areola all say that general intent is good enough. My opponent invokes the model penal code, which is what the four stages of culpability in Texas are based on. This court has held in Brasidas Ulibarri that knowledge corresponds to general intent. I mean, I want one thing to be clear, too. My position isn't that knowledge is, you know, intentish or whatever. I think that's the phrase my opponent used. It is definitely a sufficient mental state. What you need is intentional use of force. Whether something's when you have a specific intent crime, that's the best kind of intent, no problem. But general intent is still a form of intent. I think I once heard it said that 10 karat gold may not be 14. It's still gold. And I say it satisfies the definition here. It is more than recklessness. And there's no question about that under the law. I mean, and I don't think I said that. Is it more than accident? Absolutely. Right. I mean, you had asked that earlier. Isn't that what the whole purpose of lea cal is? You want an active category of violent force such that you couldn't say you accidentally caused violence to somebody. I don't know. I haven't seen a single case. My opponent certainly hasn't cited one where you can commit aggravated robbery by accidentally doing something. In fact, Judge Smith had a quote in United States v. Cruz, which I also put up in the 20th J letter. We have trouble imagining circumstances in which a person could knowingly use a dangerous weapon to assault another without intending to do so. Our position is to the extent that there's any difference, again, it's still a form of intent. And one thing I would ask this court to consider, we cited another case in our brief, Wilmeth v. State. And I find this to be interesting. Texas state courts on plain, admittedly it was plain error, but nonetheless, on plain error review of the same kind of crime, Texas robbery by threats, have found no reversible error when the jury was instructed with knowingly, when they should have been instructed with intentionally, because intentionally was the only thing alleged in the indictment. In fact, they say the distinction between knowingly and intentionally is narrow. They use another phrase, it's a hyper-technical or theoretical distinction at best. And even the practice commentators that my opponent relies on, Ellison and Kirk, even though they say knowingly is a lesser mental state than intentional, the very next words are, but is generally included with intentional and criminal statutes. And another thing is, if my opponent wants to talk about, you know, relative levels of culpability, another case that's cited in Wilmeth, Johnson v. State, says, in terms of blameworthiness between one who wills a particular result and one who is willing for it to occur, there is little difference. So you have Melchor Moceno, you've got at least two or three cases. I know I only have a few seconds left. If I could just talk about Flores Lopez and Covarruste, I can never say that one right. I know my opponent brought those up. When you look at those cases, there is discussion in there at times about general intent, but they turn on recklessness. The Covarruste, that was a Judge Gould opinion where shooting at an inhabited dwelling or in the direction, this court relied on California state cases that said recklessness is enough to satisfy that. That's not the case with this statute. And the other one was Flores Lopez, which I believe both your honors sat on. That was, right, resisting arrest under California Penal Code 69. The big problem with that statute is it said that resisting could be by force or violence, and that violence was defined probably in a public policy aimed to protect police officers as much as possible as any offensive touch, the slightest offensive touch, even if all it does is hurt the person's feelings. We know that is not a sufficient degree of force, and that was why this court in the first half of Flores Lopez said you can't satisfy 18 U.S.C. 16A. And then under the analysis of 16B, it said because it's a general intent crime, all we still know is at the very least he intentionally might have used de minimis force. There is no question about this de minimis force in this case. You have to threaten imminent bodily injury or death. And as this court said in United States v. De La Fuente, any crime which requires someone to knowingly put somebody in fear of injury or death has an implied element of the threatened use of physical force. So Flores Lopez, Covarrubias, don't worry about those cases. You've got Melchor Messina, Grajeda, and I see my time up here. Yes, your time is up. Thank you. If I have to give you more, I'd appreciate it. Okay, thank you. Mr. Fyfe? I think it's right and I agree on one thing. You should definitely read Covarrubias and Flores Lopez. Those cases stay over and over, very clear, especially in Flores Lopez. Very long passage saying general intent does not qualify for crime of violence. As long as we're dealing with labels instead of content, as the government wants to do, if it says general intent does not qualify for a crime of violence, end of story. As far as exhaustion goes, I would just point out, if you look at the transcript, very short brief in here, there was a mass silent waiver, advisal at the beginning, and then when the judge came to the point where you could have asked Mr. Palacios, are you waiving appeal? He says, please have a seat. There was no on-record waiver here. The government has not proven by clear and convincing evidence a valid waiver. There's no exhaustion problem. That is the third category of excusal for exhaustion, which the court identified in Gonzales v. Olmos. There was also the second one. So there's actually two of the categories of excusals of exhaustion in Gonzales v. Olmos. You're talking about the IJ transcript, the transcript before the IJ? Yes, Your Honor. The mass advisal came on page 168, and the end of his individual colloquy with Mr. Palacios comes on page 172. And in Lopez Velazquez, Palliar Escalon, and Ramos, which Your Honor knows about, those mass silent waivers do not, are not valid, and therefore he was not annoying an intelligent waiver of appeal in this case. Exhaustion has been met. Let me just turn lastly to Barbustos Ochoa. The government wants you to overrule that. I don't know how a panel is going to do that. I think he asked to extend it. That's what I understood him to. But I didn't understand how he wanted it extended. The problem is you're going to run headlong into Aguilera-Rios, which just came out, and if you're going to say, well, there's no real difference between in a demotion, whether it's relief or removability. In fact, the burden is very clear. That's the whole point that Bustos Ochoa pointed to is the only real substantive reason it had was that this would be shifting the burden to the government, and I agree that would be unfair. But here the burden was on the government. This was one of the most woefully insufficient records I've ever seen where the government doesn't even know how many years he served in prison. They can't even cite what Texas statute was involved. Nobody talked about any of this, and yet it's like counsel said in trial court about this, is that it's like allowing the government after a sustained Rule 29 motion to come in and say, well, let us do it again. Where's the fairness in that? The government had its opportunity, and under Perez Mejia, this court's precedent, when the government fails to bring in and show that it's an aggravated felony and there is no admission that it is an aggravated felony by the alien, which is the case here. He did not admit it was an aggravated felony. He admitted he had the conviction. Under Perez Mejia, the government has failed in its burden. That is about as defective a removal as you can imagine. To allow the government to come in and fix it now is totally unfair. It doesn't comport with the purpose of 1326D, and I point the court to the Second Circuit case, Scott, that I cited and discussed, and which this court cited with approval in an unpublished case, Alcon Mateo, which Judge Wortlaw was on. Again, the reason, as Scott said, the Second Circuit said, the whole point of a demotion is to see, did this person get due process at the time of his removal? Therefore, you can't look at information that comes in after the fact. The whole point of the inquiry is, was this proceeding comport with the minimal due process which aliens are afforded in removal? When they don't comport with just that minimal due process, you cannot use it for criminal purposes. It doesn't mean that the removal goes away. It's not a direct appeal. It's not undoing that. It's simply saying we cannot, in fairness, use it in a criminal case with the high consequences attached to it. Thank you. Thank you. You both did a great job of articulating, and interestingly, you're both incredibly animated advocates, and you both speak well with your hands. You had a chance to go over to her place. Yeah, I figured that. So thank you for an excellent argument. You guys should go have dinner together. So United States v. Palacios will be submitted, and this Court is adjourned for this session today.
judges: WARDLAW, CALLAHAN, SMITH